**AFFIDAVIT**

I, Gregory M. Gerber, having been duly sworn, do hereby depose and state as follows:

**Agent Background**

1.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since February 2023. I am currently assigned to the FBI's Boston Field Office and to that office's Corporate and Securities Fraud group. My duties include the investigation of investment fraud, money laundering, mail fraud, wire fraud, and other financial crimes. I received training at the FBI Academy in Quantico, Virginia in a variety of investigative and legal matters.

**Purpose of Affidavit**

2.      I am investigating Paul SCHNITZER ("SCHNITZER") for possible violations of 18 U.S.C. §§ 1343 (wire fraud) and 1957 (money laundering), among other offenses.

3.      As set forth below, there is probable cause to believe that SCHNITZER devised a scheme to defraud a portfolio company ("the PortCo") owned by a Massachusetts-based investment firm ("Victim A") of approximately $4 million. I make this affidavit in support of an application for a criminal complaint charging SCHNITZER with wire fraud and for a warrant to arrest SCHNITZER.

4.      This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and federal agents, information provided by representatives of Victim A, and my review of records described below. This affidavit is not intended to set forth all of the information that I have learned during this investigation but includes only the information necessary to establish probable cause for the requested complaint and arrest warrant.

## Probable Cause

### Relevant Individuals and Entities

5.      SCHNITZER lives in Orlando and Clermont, Florida.

6.      Victim A is an investment firm based in Massachusetts.

7.      PortCo is a portfolio company operating in Florida. Since approximately 2015, Victim A has held a controlling investment in PortCo.

8.      From approximately 2017 until May 20, 2024, SCHNITZER was PortCo's finance director.

### The Scheme to Defraud Victim A

9.      Beginning in approximately January 2023 and continuing through May 2024, SCHNITZER orchestrated and executed a scheme to defraud Victim A of approximately $4 million by causing PortCo's operating account to make payments disguised as "equity distributions" to a personal account that SCHNITZER controlled.

10.     SCHNITZER concealed these transfers from Victim A by providing Victim A and its auditor with falsified financial records and by causing PortCo to draw down on a line of credit to replace a portion of the amount that he stole.

### The "Equity Distributions"

11.     On or about January 18, 2023, SCHNITZER caused PortCo's operating account with The First Bank ("the First Account") to make three Automated Clearing House ("ACH") transfers, for $19,952.65, $19,322.59; and $9,741.11, to an account at Fidelity ("the Fidelity Account"). These charges appeared on PortCo's bank statements as "Equity Dis." Bank statements reflect two additional transfers to the Fidelity Account on January 24, 2023 and January 27, 2023, for $49,897.98 and $49,652.49.

12.     On or about February 2, 2023, SCHNITZER transferred $89,843.47 from the First Account to the Fidelity Account. SCHNITZER continued to transfer tens of thousands of dollars from the First Account to the Fidelity Account several times each month until May 2024.

13.     Monthly statements for the First Account during this period reflect over 90 such transfers totaling approximately $4 million, all labeled "Equity Dis."

14.     Bank records indicate that SCHNITZER was one of four current or former employees of PortCo who were authorized signers on the First Account. According to a representative from The First Bank, ACH records show that SCHNITZER initiated and authorized all of the transfers from the First Account to the Fidelity Account, which appeared as "Equity Distributions" in the ACH records.

15.     Records for the Fidelity Account indicate that SCHNITZER opened it on or about December 2, 2015 and that he is the only authorized signer on the account.

<strong>Falsified Financial Reports</strong>

16.     During the period he was transferring PortCo funds to his Fidelity Account, SCHNITZER sent representatives of Victim A regular financial reports for PortCo, including both daily reports that SCHNITZER uploaded to a file sharing site and monthly financial summaries that SCHNITZER emailed to representatives of Victim A. Each of these reports listed PortCo's purported cash balances in its bank accounts.

17.     On the financial reports he provided, SCHNITZER inflated PortCo's bank account balances to conceal his withdrawals. For example, in the monthly summary that SCHNITZER sent for March 2024, SCHNITZER falsely reported that the First Account held approximately $2 million in cash as of March 31, 2024. Bank records reflect that the highest balance the First Account held in March 2024 was approximately $240,000.

3

18.     According to representatives of Victim A, SCHNITZER typically provided Victim A's external auditor with financial statements and other materials that the auditor needed to perform its end-of-year audit of PortCo. For PortCo's 2023 audit, however, SCHNITZER did not provide any of PortCo's bank statements to the auditor despite the auditor's request for them.

19.     Based on the foregoing, there is probable cause to believe that SCHNITZER falsified financial reports he sent to Victim A and withheld bank statements from Victim A's auditor for the purpose of concealing his transfers from the First Account to his Fidelity Account.

### The Line of Credit

20.     On or about April 26, 2023—after SCHNITZER had made at least 21 transfers totaling approximately $915,000 from the First Account to his Fidelity Account—SCHNITZER caused PortCo to transfer $500,000 into the First Account from a $900,000 line of credit with The First Bank.[1]

21.     On or about June 9, 2023, SCHNITZER caused PortCo to transfer an additional $400,000 into the First Account from the line of credit, after making at least seven additional transfers to the Fidelity Account totaling approximately $395,000.

22.     According to representatives of Victim A, PortCo's president was not aware of any drawdowns on PortCo's line of credit, and neither Victim A nor PortCo's president would have authorized drawdowns on the line of credit to replace funds transferred to the Fidelity Account.

---

[1] Representatives of Victim A told investigators that SCHNITZER opened the line of credit with The First Bank with authorization from PortCo's president in July 2022. Before April 2023, PortCo had not made any substantial drawdowns on this line of credit.

23.     Based on the foregoing, there is probable cause to believe that SCHNITZER used PortCo's line of credit to make up for shortfalls in cash that resulted from his theft from the First Account.

### Discovery of the Equity Distributions

24.     On or about May 6, 2024, the Internal Revenue Service ("IRS") sent PortCo's president a notice indicating that he had missed two quarterly tax payments that SCHNITZER historically had caused PortCo to pay to the IRS on the president's behalf.

25.     Shortly thereafter, PortCo's president asked SCHNITZER about the missed payments, and SCHNITZER told PortCo's president, in substance, that SCHNITZER would address the tax issue.

26.     Once PortCo's president alerted representatives of Victim A of the tax deficiency, representatives of Victim A reviewed the monthly financial summaries that SCHNITZER provided, which falsely reported that PortCo had no tax liability payable to the IRS.

27.     Representatives of Victim A also observed significant discrepancies in PortCo's general ledger (*e.g.*, immediate reversals of large negative adjustments) that caused Victim A to request PortCo's bank statements from The First Bank.

28.     Upon receiving and reviewing statements for the First Account, representatives of Victim A discovered the recurring ACH transfers SCHNITZER had executed.

29.     Representatives of Victim A also learned from the bank records that PortCo's actual cash balance was significantly lower than the balance that SCHNITZER had falsely reported on his most recent financial report to Victim A.

30.     On or about Sunday, May 19, 2024, representatives of Victim A revoked SCHNITZER's access to PortCo's systems.

31.     Early the following day (Monday, May 20, 2024), SCHNITZER sent the following text message to PortCo's president: "[W]hile I thought you were in to check on things this week, it has unfortunately become apparent to me with the locking of my access that you no longer want me as an employee. This deeply saddens me as the situation of tax was a fixable problem and again my apologies for that. I'm saving you the trouble of a difficult, emotional conversation as I've thoroughly enjoyed working and learning from you over the years. … Thank you for everything as it has been a pleasure working with and I wish you all the best."

32.     Later that day, a representative from The First Bank alerted representatives of Victim A that SCHNITZER had transferred approximately $52,000 from the First Account to the Fidelity Account the prior Friday, May 17, 2024, and that SCHNITZER had attempted to transfer approximately $32,500 of PortCo's money to the Fidelity Account that morning—after he sent the text message resigning from the Company. The First Bank prevented this latter transfer pursuant to a hold that Victim A had The First Bank place on the account.

33.     Investigators interviewed a senior executive at Victim A. According to the executive, PortCo paid SCHNITZER a salary of approximately $185,000 in 2023 and a projected salary of approximately $192,000 in 2024, in addition to incentive credits entitling SCHNITZER to future distributions, subject to certain preconditions, including a vote of PortCo's board. The executive stated that PortCo had never made any equity distributions and that SCHNITZER was not authorized to make any equity distributions from PortCo.[2]

---

[2] Public court records indicate that SCHNITZER pleaded guilty to one count of wire fraud in February 2003. The court sentenced him to 24 months in prison and ordered restitution in the amount of $715,000. Based on the payments reflected on the public docket, I believe that SCHNITZER continues to owe over $700,000 in restitution in connection with that case. *See* Crim. No. 1:03-cr-00003-GEL (S.D.N.Y. 2003).

**Conclusion**

34.     Based on the information set forth above, there is probable cause to believe that

SCHNITZER committed wire fraud, in violation of 18 U.S.C. § 1343.


Gregory M. Gerber
Special Agent
Federal Bureau of Investigation


Subscribed to via telephone in accordance with Federal Rule of Criminal Procedure 4.1
on May 20, 2024

Hon. Judith G. Dein
United States Magistrate Judge

7